## GENERAL PAINT CORPORATION v. KRAMER.*
### No. 845.

Circuit Court of Appeals, Tenth Circuit.
Dec. 7, 1933.

A. A. Davidson, of Tulsa, Okl. (Chas. E. Townsend, of San Francisco, Cal., Preston C. West, of Tulsa, Okl., and Orrick, Palmer & Dahlquist, of San Francisco, Cal., on the brief), for appellant.

John H. Cantrell and A. J. Biddison, both of Tulsa, Okl. (Harry Campbell, Valjean Biddison, and Harry Campbell, Jr., all of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On August 26, 1929, Kramer executed and delivered to the General Paint Corporation three written assignments by which he transferred to it his rights in three certain inventions for improvements to a pipe wrapping machine and the patent rights therefor, described as "Coupling for Pipe Wrapping Machine," "Dolly and Return Trackway," and "Protecting Sleeve." Each of these assignments recited a consideration of one dollar.

Kramer brought an action against the Paint Corporation upon an alleged contract of employment for his lifetime, entered into as a further consideration for such assign-

*Rehearing denied January 8, 1934.

ments, and recovered judgment for $56,625. This court on appeal [57 F.(2d) 698] reversed such judgment upon the ground, among others, that the oral agreement undertook to alter a written contract and fell within the inhibition of section 5081, C. O. S. 1921, which reads as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

Thereafter Kramer brought this action to recover upon an implied contract the reasonable value of the inventions and patent rights assigned. From a judgment for Kramer, the Paint Corporation has appealed.

Kramer invented the devices above referred to while in the employ of Hill-Hubbell & Company, a corporation, which company in addition to its paint business was engaged in pipe wrapping.

In 1928 the General Paint Corporation was organized as the result of a merger of six leading paint companies on the Pacific Coast, including the Hill Company. The Paint Corporation acquired all of the stock and assignable assets of the Hill Company. The latter company owned certain unassignable licenses and rights, and was qualified to do business in certain states where the Paint Corporation was not. Because thereof, the corporate existence of the Hill Company was not terminated, and it continued to transact business as a subsidiary of the Paint Corporation.

Prior to the commencement of the instant case, and on April 29, 1932, the Paint Corporation tendered a reassignment to Kramer of such inventions and patent rights, but which reserved in it shop rights and non-exclusive licenses to use the inventions for the "Dolly and Return Trackway," and the "Protecting Sleeve." Kramer rejected this tender.

In its answer the Paint Corporation pleaded as a defense the tendered reassignment of the inventions and patent rights, and the rejection thereof by Kramer; but at the commencement of the trial withdrew that defense.

Kramer introduced proof of the assignment by him of the inventions and patent rights, the value thereof, and the oral agreement for life employment.

The Paint Corporation introduced evidence establishing the tender of the reassignments, and undertook to show that the inventions and patent rights were valueless.

At the close of the evidence, the Paint Corporation moved for a directed verdict in its favor. This motion was denied.

■ Counsel for the Paint Corporation contend that the motion for a directed verdict should have been granted because of the tendered reassignments. A sufficient answer to this contention is that this defense was expressly withdrawn. Furthermore, the reassignments reserved shop rights in the Paint Corporation. Kramer invented such devices while in the employ of the Hill Company; the shop rights, if any, were acquired by that company. A shop right is non-assignable. Hapgood v. Hewitt, 119 U. S. 226, 233, 234, 7 S. Ct. 193, 30 L. Ed. 369; Thomson v. Citizens' Nat. Bank of Fargo (C. C. A. 8) 53 F. 250, 255, 256; Troy Iron & Nail Factory v. Corning, 55 U. S. (14 How.) 193, 216, 14 L. Ed. 383; Oliver v. Rumford Chemical Works, 109 U. S. 75, 82, 3 S. Ct. 61, 27 L. Ed. 862; Locke v. Lane & Bodley Co. (C. C. Ohio) 35 F. 289.

The Hill Company was not merged into the Paint Corporation, but continued as an active corporation. It follows that the shop rights if any were in the Hill Company, that the tendered reassignments would not have fully restored to Kramer what he assigned to the Paint Corporation, and that the tender constituted no defense in the instant case.

■ Counsel for the Paint Corporation further contend that the motion should have been granted because this action is predicated on a verbal contract which is not enforceable under section 5081, supra.

It is well settled that where one person has transferred property to another under a contract which is non-enforceable because of the statute of frauds, and the transferee relying upon the statute of frauds declines to perform his part of the contract, the transferor may recover upon an implied contract the reasonable value of the property transferred. Day v. New York Cent. R. Co., 51 N. Y. 583; Basford v. Pearson, 9 Allen (Mass.) 387, 389, 392, 85 Am. Dec. 764; Cromwell v. Norton, 193 Mass. 291, 79 N. E. 433, 118 Am. St. Rep. 499; Kemp v. Kemp, 248 Mass. 354, 142 N. E. 779; Booker v. Wolf, 195 Ill. 365, 63 N. E. 265; Jelleff v. Hummel, 56 N. D. 512, 218 N. W. 227; Nelson v. McElroy, 140 Minn. 429, 168 N. W. 179, 587; Earl of Falmouth v. Thomas, 1 Cromp. & M. 88; Talbert v. United States, 25 Ct. Cl. 141, 156; Franklin v. Matoa Gold Min. Co. (C. C. A. 8) 158 F. 941, 948, 949, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302; Clark v. United States, 95 U. S. 539, 542, 24 L. Ed. 518.

In such a case the contract is not illegal in the sense that it is malum in se; it is merely malum prohibitum, or non-enforceable. A party to such a contract, who has received property thereunder and who has refused to perform on his part on the ground that the contract is non-enforceable, is liable upon an implied contract for the reasonable value of the property he has received. Logan County Nat. Bank v. Townsend, 139 U. S. 67, 75, 76, 11 S. Ct. 496, 35 L. Ed. 107; Parkersburg v. Brown, 106 U. S. 487, 503, 1 S. Ct. 442, 27 L. Ed. 238.

Counsel for the Paint Corporation also assert that the evidence of Kramer afforded no competent proof of the value of the inventions and patent rights, and that the evidence on the part of the Paint Corporation established that they were worthless.

In Jenkins Petroleum Process Co. v. Sinclair Refining Co. (C. C. A. 1) 62 F. (2d) 663, 665, the court stated how the value of patent rights may be determined, as follows: "Its money value may be estimated from the nature of the invention disclosed, its place in the art to which it relates, the step which the inventor took, and the change which it effected in the practice of the art. These facts, and other relevant circumstances, may be supplemented by opinion evidence of value, as in the case of real estate."

Kramer had had a great deal of experience with the Hill Company and the Paint Corporation in the art of pipe wrapping. For a considerable time he was superintendent of their pipe wrapping operations. He testified that his patented devices increased the daily capacity in machines from three-fourths of a mile to six miles of pipe. He also testified as an expert as to the reasonable value of the inventions and the patent rights.

Walker, a witness for Kramer, was an experienced mechanical engineer and had had considerable experience in pipe wrapping as an employee of the Paint Corporation. He later engaged on his own account in the coating and wrapping of pipe, and in the licensing of machines for pipe wrapping. He testified as an expert as to the value of the inventions and patent rights, and to the amount of reasonable royalties therefor.

Kramer also introduced evidence of advertisements by the Paint Corporation during 1929 and 1930, which attributed great utility and value to the inventions in question.

In addition to this, there was evidence of the oral contract itself which, though neither binding nor conclusive as to the amount of recovery, was admissible as a circumstance to be considered in estimating the value of the inventions and patent rights. Zachry v. Nolan (C. C. A. 5) 66 F. 467, 471; Clark v. United States, 95 U. S. 539, 543, 24 L. Ed. 518.

It may be observed, parenthetically, that proof of the oral contract was also admissible to rebut any presumption that the consideration recited in the assignments was the entire consideration therefor. Horton v. Wollner, 71 Ala. 452.

Proof of reasonable royalties for the use of such inventions was a proper element to be considered by the jury in arriving at the value of the inventions and patent rights.

Whether a witness possesses the requisite qualifications to testify as an expert is a matter resting largely in the discretion of the trial court, and its decision will not be disturbed unless it is manifest that the trial court has fallen into error or abused its discretion. Clarke v. Hot Springs E. L. & P. Co. (C. C. A. 10) 55 F. (2d) 612, 615; Gila Valley, G. & N. R. Co. v. Lyon, 203 U. S. 465, 27 S. Ct. 145, 51 L. Ed. 276; People v. McCarthy, 115 Cal. 255, 46 P. 1073. We are not convinced that the trial court erred or abused its discretion in holding that Kramer and Walker were qualified to testify as experts.

The judgment is affirmed.